*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GRAUMAN/COOK/ARNDT, Minors.

UNPUBLISHED
June 03, 2025
2:13 PM

No. 372411
Allegan Circuit Court
Family Division
LC No. 18-060195-NA

Before: PATEL, P.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her minor children, MG, RC, SA, and LA. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

All four of respondent's children were taken into protective custody on the basis of allegations that respondent-mother was using methamphetamine, misusing prescription medication, and had locked the children in their bedrooms or forced them to take cold showers while fully clothed as a form of corporal punishment. MG's biological father took custody of her. RC was placed in a relative placement, and SA and LA were placed together in a separate relative placement. Throughout the two-year proceedings, respondent-mother was mostly uncooperative with drug screenings, inconsistent in her attendance and behavior at supervised parenting times, largely did not follow her case service plan, and did not maintain secure employment, housing, or transportation. The trial court terminated respondent-mother's parental rights, finding that it was in the children's best interests to do so. Respondent-mother now appeals.

## II. STANDARDS OF REVIEW

We review a trial court's best-interests determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; 15 NW3d 287 (2023) (quotation marks and citation omitted).

-1-

## III. BEST INTERESTS

Respondent-mother contends that the trial court clearly erred in finding it was in the children's best interests to terminate her parental rights. We disagree.

"The trial court must order the parent's rights terminated" if the Michigan Department of Health and Human Services (DHHS) "establishe[s] a statutory ground for termination by clear and convincing evidence and [the trial court] finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the children's best interests." *Id*. This Court focuses on the child—not the parent—when determining whether termination is in a child's best interests. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022).

When determining best interests:

[A] court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

The trial court also "has a duty to decide the best interests of each child individually." *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). "[I]f the best interests of the individual children significantly differ, the trial court should address those differences when making its determination of the children's best interests." *White*, 303 Mich App at 715 (emphasis omitted).

Throughout the proceedings, respondent-mother struggled to comply with her treatment plan; she participated in about half of her required drug screenings, tested positive for illicit substances on at least seven occasions, failed to maintain adequate housing, and had inconsistent employment. Respondent-mother was also inconsistent with parenting time and struggled to appropriately parent her children during the visits she attended. RC, SA, and LA reported having regular nightmares about respondent-mother and would often act out before visits because they did not want to participate in parenting time. As a result of respondent-mother's abuse, SA, LA, and RC continued to exhibit extreme distress while in their foster care placements. They would scream and cry if their bedroom doors were closed or their caregivers attempted to bathe them. In fact, RC was diagnosed with post-traumatic stress disorder. Only MG exhibited any kind of bond with respondent-mother. The other children were bonded with their caregivers in their respective placements, and their placements were willing to adopt them and able to properly provide for them.

These facts support the trial court's finding that termination was in the children's best interests. The trial court considered RC, SA, and LA as a group, finding they were similarly situated even though they were placed with different relatives. It noted that all three children were young and in need of long-term stability, were likely to be adopted by their relative caregivers, and could continue to have relationships with their family members and siblings in their current

placements. They had not been in respondent's care in over two years, and reunification was unlikely to occur any time soon given their age and need for permanency and stability. The trial court acknowledged that their relative placements weighed against termination, but reasoned that respondent-mother's abuse, inability to parent her children, and failure to comply with her treatment plan or consistently attend parenting time clearly weighed in favor of termination. Moreover, they were adequately cared for in their respective placements and would be afforded long-term permanency and stability.

The trial court conducted a separate best-interests analysis for MG because she was older and placed with her biological father. It acknowledged that MG could not be adopted because she was placed with her father, but, even with this placement, the trial court was unconvinced that a custody or parenting-time arrangement between MG's father and respondent-mother could adequately provide stability and safety for MG. Although MG expressed wanting to maintain a relationship with respondent-mother and was more bonded with her than respondent's other children, the trial court ultimately concluded that MG's need for permanency and stability was sufficient justification to terminate respondent's parental rights. Moreover, the trial court found MG could continue to have a relationship with her siblings while in her father's care. The record supports the trial court's findings as to all the children. Accordingly, there is no error.

Affirmed.

/s/ Sima G. Patel
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron